Filed 7/16/14  P. v. Mayhan CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HAYWARD MAYHAN,<br><br>    Defendant and Appellant. | F066163<br><br>(Super. Ct. No. 10CM7255)<br><br>**OPINION** |

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Kings County.  Steven D. Barnes, Judge.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Cornell, Acting P.J., Detjen, J. and Franson, J.

This case comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Having reviewed the record as required by *Wende*, we affirm the judgment.

We provide the following description of the procedural history and facts of the case. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

## PROCEDURAL HISTORY

A complaint was filed August 31, 2010, consisting of four counts, all arising out of an incident on March 9, 2010, at Corcoran State Prison where Hayward Mayhan was an inmate. A preliminary hearing was held that same day and Mayhan was held to answer as charged in the complaint.

A very lengthy pretrial period ensued, punctuated by continuances. At a hearing on February 15, 2012, the district attorney put a formal settlement offer on the record, which was subsequently rejected by Mayhan.[1] On February 17, 2012, Mayhan requested a *Marsden*[2] hearing, but then withdrew the request on February 22, 2012. An amended information was filed that same day, adding a count.

Mayhan requested another *Marsden* hearing, which was heard and granted on June 22, 2012. Substitute counsel was appointed July 10, 2012.

On September 18, 2012, a second amended information was filed charging Mayhan, in count 1, with a violation of Penal Code section 4501.5[3], battery on a non-confined person on prison property, Correctional Officer Dean Fugate. It was further alleged, pursuant to section 12022.7, subdivision (a), that the commission of this offense caused great bodily injury to Fugate. Mayhan was also charged, in count 2, with a

---

[1] The offer, if Mayhan pled to a violation of Penal Code section 245, subdivision (c) (assault with a deadly weapon other than a firearm), was for one-third the midterm of four years, doubled by a prior strike, for a total of 32 months, to be served consecutive to his current sentence.

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[3] All further statutory references are to the Penal Code unless otherwise stated.

violation of section 4502, subdivision (a), custodial possession of a sharp instrument. It was alleged as to both counts that Mayhan had suffered six serious or violent "strike" felonies. (§§ 1170.12, subds. (a)-(d); 667, subds. (b)-(i).)

On the first day of trial, October 9, 2012, the trial court held a "manifest need" hearing and determined Mayhan would be shackled under a covered desk with his hands free during trial. Before the evidence portion of trial began, Mayhan made another *Marsden* motion, which was heard and denied. On the third day of trial, Mayhan asked for another *Marsden* hearing. The trial court conducted a closed hearing and denied the motion to relieve counsel.

Instructions were discussed on the record. The parties agreed that the trial court would give, inter alia, CALCRIM No. 355, regarding the defendant's absolute right not to testify; CALCRIM No. 204, which informed the jury that it was to completely disregard the fact that two correctional officers were seated behind Mayhan; and CALCRIM No. 337, which advised the jury to disregard the fact that the inmate witnesses were restrained and in custody.

The prosecutor dismissed one strike allegation from 1989 out of Los Angeles, due to problems of proof.

During deliberations, the jury requested a read back of one witness's cross-examination testimony. The jury then found Mayhan guilty of count 1, battery, but found not true the great bodily injury allegation attached to that count. It also found Mayhan guilty of count 2, possession of a sharp instrument.

Mayhan requested a bifurcated jury trial on the prior "strike" allegations, which commenced immediately after the verdicts were rendered in the guilt phase of the trial. After the jury retired to deliberate and submitted several questions, Mayhan offered to admit a July 1999 strike. In response, the district attorney offered a maximum confinement of 10 years on this case, instead of the potential 50 years to life, if the jury returned true findings on all of the remaining strike priors before them. The trial court

3.

clarified that the sentence would be consecutive to the sentence Mayhan was already serving. After the trial court gave Mayhan an advisement of the consequences and of the rights he was giving up, Mayhan entered his plea admitting the 1999 strike prior. The district attorney then requested that the remaining prior strike allegations be struck in the interest of justice. The jury was told the matter had been settled and released.

Mayhan was sentenced to one-third the mid-term of three years on the battery conviction and one-third the mid-term of three years on the possession of a sharp instrument conviction, both doubled under the three strikes law, for a total of four years. Both terms were ordered to be served consecutively to the incomplete sentence for which Mayhan was currently imprisoned.[4]

Mayhan was ordered to pay a restitution fine of $960 (§ 1202.4, subd. (b)), a parole completion fine of $960 (§ 1202.45), a court security fee of $80 (§ 1465.8) and a court facilities funding assessment of $60 (Gov. Code, § 70373, subd. (a)(1)).

---

[4] Mayhan was currently serving 19 years in Los Angeles County case No. GA035295. We note also that, during the procedural history of the current case, Mayhan was appealing his conviction with this court for an incident that occurred in October of 2006, while a prisoner. As a result of that incident, Mayhan was convicted in December of 2008 with attempted murder (§§ 664/187); attempted murder of a public official (§ 217.1, subd. (b)); two counts of assault with a deadly weapon by a prisoner (§ 4501); aggravated battery by a prisoner (§ 4501.5); and custodial possession of a weapon (§ 4502, subd. (a)). In March of 2009, he was sentenced to 104-years-to-life. In a nonpublished opinion we found error occurred during one of his *Marsden* motions and reversed and remanded the matter and ordered that the trial court conduct a *Marsden* hearing focused solely on Mayhan's complaint that he had mental health issues at the time of the October 2006 incident. We also found error in sentencing and reduced his aggravated sentence to 91 years to life. (*People v. Mayhan* (Mar. 17, 2011, F057373) [nonpub. opn.].) The trial court, in accordance with this court's order, conducted a *Marsden* hearing on April 25, 2012, which was subsequently denied and the corrected judgment reinstated. Mayhan then appealed the denial of that *Marsden* motion, but in our nonpublished opinion we found no error and affirmed. (*People v. Mayhan* (Nov. 7, 2013, F065200) [nonpub. opn.].) We take judicial note of both previous opinions.

## STATEMENT OF THE FACTS

The incident at issue occurred while Mayhan was a prisoner housed in the Security Housing Unit (SHU) at Corcoran State Prison.  On the morning of March 9, 2010, Mayhan was scheduled to go to court on another matter.  Correctional Officers Dean Fugate and Annette Kropp arrived to pick up Mayhan from his cell and take him to court.

When the officers arrived at Mayhan's cell, cell 45, to inform him that they were there to pick him up, they saw Mayhan cleaning his cell through the Plexiglas-covered metal grating on the door.  Mayhan told the officers he had only been notified 10 minutes earlier that he had a court date and was not yet ready to go.  Kropp recalls Mayhan stating that he had had a problem with Fugate in the past and told Fugate "not to ride" him (Mayhan).

The officers gave Mayhan a few minutes to finish what he was doing and then told him they were on time constraints and he had to come out.  Mayhan did not respond, but continued cleaning his cell.  According to protocol in place for dealing with recalcitrant inmates, Fugate and Kropp went to speak to Jared Hubbard, the Sergeant in charge.  Hubbard then went to speak to Mayhan, who said he would go, but just needed a few more minutes.

While speaking to Mayhan, Hubbard was called by the inmate in cell 48 and walked down the hall to talk to him.  Fugate began the process of getting Mayhan from his cell by opening the food port in the door.  Fugate reached in and performed an unclothed body search of Mayhan, checking him for contraband.  This proceeded without incident, and Mayhan was given a jumpsuit to wear.

According to SHU procedures, Mayhan placed his hands through the food port and Officer Fugate front-handcuffed him.  Mayhan was then asked to turn around with his face to the back of the cell, and when the door was unlocked, to back out.  Once out of the cell, he was asked to turn around.

5.

When escorting inmates, correctional officers are in charge of physically starting, stopping and turning the inmates. An officer typically places his hand on the inmate's biceps area to guide him. Fugate was on Mayhan's left; Kropp on Mayhan's right. Kropp opened up her expandable baton because the situation "just … didn't feel right" due to Mayhan's demeanor.

When Fugate grasped Mayhan's left upper arm, Mayhan immediately pulled away. Fugate took a firmer grasp of Mayhan's upper arm and told him not to pull away. At this point, Mayhan twisted his body to the left, swung his two handcuffed arms around and upward, and hit Fugate in the right eye with the handcuffs.

Officer Fugate was knocked to the floor, dazed. When Fugate was able to get up, he recalled Mayhan facing him in a fighting stance, although Mayhan then got onto the floor without any prompting from Fugate. Meanwhile, Kropp used her baton to strike Mayhan on the left thigh when he did not comply and ordered him to get down. When Mayhan backed up, Kropp took a more aggressive stance and yelled at Mayhan. Hubbard, who observed the assault, then saw Mayhan turning toward the section door, which Hubbard blocked with his baton drawn. Mayhan then got down.

Fugate got up and jumped on top of Mayhan and held him down while help was summoned. He used his body weight to hold Mayhan down, with his knee in Mayhan's lower back and his hands holding down Mayhan's shoulder. The vision in Fugate's right eye was obscured by the bleeding from a three-quarter inch cut above his eye, which required three stitches.

Correctional Officer Tony Avila, a security squad officer at Corcoran State Prison, searched Mayhan's cell and found two pieces of brown plastic, one of which was sharpened to a point. The items were in a cubby hole under Mayhan's bunk, secreted inside a book and wrapped in tissue paper and string. Avila had seen such sharpened items used as "slashing type weapon[s]" in assaults inside the prison numerous times.

*Defense*

Travon Freeman, an inmate housed in cell 47, testified that he heard Fugate tell Mayhan to "hurry the 'fuck' up, you moving too slow." After the cell door opened, Fugate then grabbed Mayhan by the elbow, slammed him down and banged his head into the floor. Freeman saw Kropp hit Mayhan with her baton. The next time Freeman saw Mayhan he had "bruises" and "wounds" on his face. Freeman never saw or heard Mayhan do anything that would have caused the officers to put him on the ground. Freeman did not see Mayhan strike Fugate.

Danny Cohea, an inmate who was at the time housed in cell 48, testified that he was able to hear the transportation officers discussing something with Mayhan that morning and there was some sort of dispute. Mayhan did not like it that the officers caught him in the middle of his cleaning routine.

Cohea, who then called Hubbard over to complain that his kosher meal had not been delivered properly over the prior weeks, saw Fugate go down to the ground. Cohea assumed Fugate slipped. He then saw Kropp hit Mayhan with her baton and he fell to the floor. According to Cohea, Hubbard could not see Fugate go down and only heard Kropp yelling at Mayhan, because Cohea and Hubbard were in conversation at the time. At that point, Hubbard got out his pepper spray and ran over to where the melee occurred. Cohea saw Fugate get onto Mayhan's back and then take his head and slam his face into the floor.

Samuel Hackett, an inmate housed in cell 43, remembered seeing two officers come to Mayhan's cell. Hackett was busy in his own cell but heard some arguing, as if Mayhan was being rushed. He then saw Mayhan "get jerked … then, he was on the ground and there was a lot of commotion." Hackett thought it looked like Mayhan had

7.

tripped and the officers were restraining him. He did not see what happened after Mayhan was down on the ground.

### *Rebuttal*[5]

Katie Akers, a private investigator who did work for Mayhan's previous attorney, interviewed defense witness Freeman in January of 2012. Freeman told Akers that he was in cell 47 at the time of the altercation and that both officers pulled Mayhan out of his cell and slammed him on the ground. Akers testified that, according to Freeman, both officers were banging Mayhan's head on the ground and slamming his face. He thought Mayhan was bleeding from his nose.

Fugate returned to the stand and stated that he did not push Mayhan to the ground, but that he went down on his own. He then restrained Mayhan by placing his knee on his lower back and his hands on Mayhan's shoulders. At no point did he or Kropp slam Mayhan's head to the floor. The blood from Fugate's eye wound dripped onto Mayhan and the floor, as seen in Exhibit 20. Fugate did not see Mayhan bleeding or injured.

Kropp reiterated her testimony that she ordered Mayhan to go down to the floor, but that he did so on his own. According to Kropp, Fugate did not slam Mayhan's face to the floor.

Hubbard confirmed the other officers' and his own previous testimony that Mayhan went to the ground on his own. He did not see Mayhan bleeding or injured.

Officer Oscar Magallanes from the investigative unit was present when photographs were taken of Mayhan after the fracas. Two photographs of Mayhan, taken about half an hour after the event, were entered into evidence.

---

**5** By stipulation of the parties, the prosecutor's rebuttal witnesses testified out of order before the defense finished its case in order to save time because Hackett was not available until the following day.

## DISCUSSION

Mayhan appealed and we appointed counsel to represent him. Counsel filed an opening brief that set forth the facts of the case and requested this court to review the record and determine whether there were any arguable issues on appeal. (*Wende, supra,* 25 Cal.3d 436.) Mayhan was advised by counsel of the right to file a supplemental brief within 30 days of the date of the filing of the opening brief. More than 30 days have elapsed, and we have received no communication from Mayhan. Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to Mayhan.

## DISPOSITION

The judgment is affirmed.